1

2

3

4

5

6                              IN THE UNITED STATES DISTRICT COURT

7                            FOR THE EASTERN DISTRICT OF CALIFORNIA

8    EUGENE EVERETT WELCH,

9              Plaintiff,                         No. CIV S-03-0072 LKK JFM P

10        v.

11   CALIFORNIA DEPARTMENT OF
     CORRECTIONS, et al.,
12
               Defendants.                        FINDINGS & RECOMMENDATIONS
13   _____/

14              Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

15   42 U.S.C. § 1983.  Plaintiff claims that defendants violated his rights under the Religious Land

16   Use and Incarcerated Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq., by requiring him to cut

17   his hair and shave his beard pursuant to grooming regulations promulgated and implemented by

18   the California Department of Corrections[1] in 1997.  Plaintiff seeks declaratory and injunctive

19   relief, and money damages.  (See Order filed February 1, 2005, at 2.)  This matter is before the

20   court on defendants' motion for summary judgment.  Defendants seek summary judgment on the

21   ground that this action has been mooted by the promulgation this year of new grooming

22   regulations.

23                          SUMMARY JUDGMENT STANDARDS UNDER RULE 56

24              Summary judgment is appropriate when it is demonstrated that there exists "no

25   _____

26        [1]  Now known as the California Department of Corrections and Rehabilitation (CDCR).

                                                    1

1  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

2  matter of law." Fed. R. Civ. P. 56(c).

3           Under summary judgment practice, the moving party

4     always bears the initial responsibility of informing the district court
       of the basis for its motion, and identifying those portions of "the
5     pleadings, depositions, answers to interrogatories, and admissions
       on file, together with the affidavits, if any," which it believes
6     demonstrate the absence of a genuine issue of material fact.

7  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

8  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

9  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

10 to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

11 after adequate time for discovery and upon motion, against a party who fails to make a showing

12 sufficient to establish the existence of an element essential to that party's case, and on which that

13 party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

14 concerning an essential element of the nonmoving party's case necessarily renders all other facts

15 immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

16 whatever is before the district court demonstrates that the standard for entry of summary

17 judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

18          If the moving party meets its initial responsibility, the burden then shifts to the

19 opposing party to establish that a genuine issue as to any material fact actually does exist.  See

20 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

21 establish the existence of this factual dispute, the opposing party may not rely upon the

22 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

23 form of affidavits, and/or admissible discovery material, in support of its contention that the

24 dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

25 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

26 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

2

1   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

2   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

3   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

4   1436 (9th Cir. 1987).

5          In the endeavor to establish the existence of a factual dispute, the opposing party

6   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

7   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

8   versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

9   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

10  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

11  committee's note on 1963 amendments).

12         In resolving the summary judgment motion, the court examines the pleadings,

13  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

14  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

15  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

16  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

17  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

18  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

19  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

20  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

21  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

22  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

23  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

24         On February 18, 2003, the court advised plaintiff of the requirements for opposing

25  a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

26  /////

1     F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v.

2     Eikenberry, 849 F.2d 409 (9th Cir. 1988).

3                                   ANALYSIS

4     I.  Undisputed Facts

5            At all times relevant to this action plaintiff has been a prisoner at Mule Creek

6     State Prison (Mule Creek) in Ione, California, defendant Alameida was the director of the

7     California Department of Corrections and Rehabilitation (CDCR), and defendant Knowles was

8     the Warden of Mule Creek.  Plaintiff is an Orthodox Christian, though he has not yet been

9     baptized in that church.  Plaintiff wears long hair and a long beard because of his religious

10     beliefs.

11           In 1997, the CDCR implemented grooming regulations for male prisoners,

12     codified at California Code of Regulations title 15, section 3062 (hereinafter "the 1997 grooming

13     standards.")  The regulations required, in relevant part, that male inmates could not grow their

14     hair longer than three inches in length and that inmates were prohibited from wearing beards at

15     any length.  (Declaration of Timothy Lockwood, attached as Exhibit A to Defendants Separate

16     Statement of Undisputed Material Facts in Support of Motion for Summary Judgment, filed

17     February 3, 2006, ¶ 4.)  Under these grooming standards plaintiff received multiple disciplinary

18     actions on his record for refusing to cut his hair or beard based on his religious beliefs.

19     Disciplinary actions included removing plaintiff from "A1-A" privilege status and placing him

20     on "C" status, which limits inmate privileges.  (See Exhibit D to Plaintiff's Objection to

21     Defendants' Notice of Motion and Motion for Summary Judgment, filed February 23, 2006.)

22           On July 29, 2005, the Ninth Circuit held that the 1997 CDCR grooming policy

23     violated RLUIPA because the policy was not the least restrictive means to achieve the state's

24     compelling interest in maintaining prison safety and security.  Warsoldier v. Woodford, 418 F.3d

25     989 (2005).  In response to Warsoldier, on January 17, 2006, the CDCR filed emergency changes

26     to the 1997 grooming regulations.  On July 27, 2006, the new grooming regulations became final.

1  See California Code of Regulations, title 15, § 3062 and history thereof.  In relevant part, the new

2  grooming regulations allow inmates of either sex to grow their hair to any length, so long as the

3  hair does not extend over the eyebrows, cover the inmate's face, or pose any risk to health or

4  safety.  (Cal. Code of Regs, title 15, § 3062(e) as amended.)  The changes also allow a male

5  inmate to grow facial hair including a beard, mustache, or sideburns, so long as the facial hair

6  does not "extend more than one half inch in length outward from the face."  (Cal. Code of Regs,

7  title 15, § 3062(h) as amended.)

8  On January 31, 2006, plaintiff was removed from "C" status and placed on "A2-

9  B" status.  (Exhibit D to Plaintiff's Statement of Undisputed Facts.)  On June 7, 2006, plaintiff's

10  status was restored to "A1-A" status, effective March 31, 1999.  (Exhibit F to Plaintiff's Notice

11  to the Court (Plaintiff's July 10, 2006 Notice), filed July 10, 2006, at 2.)  Additionally, all

12  grooming-related disciplinary actions were removed from plaintiff's record, and all good time

13  credits were restored.  (Id.)

14  II.  Defendants' Motion

15  Defendants seek summary judgment on the grounds that plaintiff's claims for

16  declaratory judgment and injunctive relief are moot and that they are entitled to qualified

17  immunity from plaintiff's claim for damages.[2]

18  A.  Mootness

19  Mootness is "the doctrine of standing set in a time frame: The
requisite personal interest that must exist at the commencement of
20  the litigation (standing) must continue throughout its existence
(mootness)."  United States Parole Comm'n v. Geraghty, 445 U.S.
21  388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980) (quoting
Henry Monaghan, Constitutional Adjudication: The Who and
22  When, 82 Yale L.J. 1363, 1384 (1973)).  Article III of the United
States Constitution confers jurisdiction on federal courts over
23  "cases" and "controversies" and has been construed to prohibit
advisory opinions.  See SEC v. Medical Comm. for Human Rights,

24

25  [2] Defendants also contend that plaintiff's sole remedy for the loss of good-time credits is
an application for a writ of habeas corpus.  Plaintiff's good time credits have been restored.
26  Accordingly, the court need not reach this argument.

1   404 U.S. 403, 407, 92 S.Ct. 577, 579, 30 L.Ed.2d 560 (1972);
Muskrat v. United States, 219 U.S. 346, 362, 31 S.Ct. 250, 255, 55
2   L.Ed. 246 (1911).  A federal court has no jurisdiction to hear a case
that cannot affect the litigants' rights.  Allard v. DeLorean, 884
3   F.2d 464, 466 (9th Cir.1989).

4         There are, however, a few exceptions to the mootness doctrine.
These include cases where the defendant's conduct constitutes a
5   wrong "capable of repetition yet evading review," or where the
defendant voluntarily ceases an allegedly illegal practice but is free
6   to resume it at any time.  See Barilla v. Ervin, 886 F.2d 1514, 1519
(9th Cir.1989); Lindquist v. Idaho State Bd. of Corrections, 776
7   F.2d 851, 854 (9th Cir.1985).

8   Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1509 (9th Cir. 1994).  "An action is moot

9   where the plaintiff already has received all of the relief which would result from a favorable court

10  ruling."  Wysocki v. Sullivan, 761 F.Supp. 693, 696 (C.D.Cal. 1991) (citing DeFunis v.

11  Odegaard, 416 U.S. 312, 319-320 (1974)).

12        As noted above, plaintiff seeks declaratory and injunctive relief from the

13  continued enforcement of, as well as the consequences of his non-compliance with, the 1997

14  grooming standards.  The undisputed evidence shows that defendants are no longer enforcing the

15  1997 grooming standards.  The undisputed evidence also shows that plaintiff has been restored to

16  "A1-A" status, effective March 31, 1999, all grooming related disciplinary actions have been

17  were removed from plaintiff's record, and all good time credits have been restored.  There is no

18  other cognizable injury to plaintiff traceable to enforcement of the 1997 grooming regulations

19  that might be remedied through this action.

20        In his opposition to defendants' motion for summary judgment, filed February 23,

21  2006, plaintiff contends that this action is not moot because the new 2006 grooming standards

22  still require him to trim his beard to the half-inch maximum length, in violation of his religious

23  beliefs, and plaintiff alleges that he continues to be disciplined for his facial hair length.  There is

24  no evidence in the record to support this contention.

25        A CDC 128-C form dated January 31, 2006 and issued after a program review

26  conducted by a Unit Classification Committee notes that plaintiff "still violates the new

6

1 grooming standards with an excessively long beard (approx. 10 inches in length).  (Ex. D to

2 Plaintiff's Opposition to Defendants' Motion for Summary Judgment, filed February 23, 2006.)

3 Plaintiff filed the same document again on July 10, 2006, together with other exhibits showing

4 that plaintiff has been restored to A-1-A status, all grooming related disciplinary convictions

5 have been set aside, and all grooming related credit loss has been restored.  (Exs. E and F to

6 document filed by plaintiff on July 10, 2006.)  There is no evidence that the new grooming

7 regulation governing beard length has been enforced against plaintiff, or that plaintiff has

8 exhausted administrative remedies with respect to a challenge to the new grooming regulations.

9 Cf. 42 U.S.C. § 1997e(a).  Plaintiff's challenge to the 2006 grooming regulations is not yet ripe

10 for review by this court.  See Earth Island Institute v. Ruthenbeck, __ F.3d __, 2006 WL 2291168,

11 slip op. at 6 (9th Cir. Aug. 10, 2006) (quoting Lujan v. National Wildlife Federation, 497 U.S.

12 871, 891 (1990) ("a regulation is ordinarily not ripe for review "'until the scope of the

13 controversy has been reduced to more manageable proportions, and *its factual components*

14 *fleshed out, by some concrete action applying the regulation* to the claimant's situation in a

15 fashion that harms or threatens to harm him.' . . . . (emphasis added).")

16    For all of the foregoing reasons, plaintiff's claim for declaratory and injunctive

17 relief on the RLUIPA claim is moot.  Defendants are therefore entitled to summary judgment on

18 this claim.

19    C. Money Damages

20    Plaintiff requested damages in the amount of $150,000 from the defendants for

21 the extra punishments he received and the "mental stress" that he suffered as a result of

22 enforcement of the grooming regulations.  Defendants contend that they are entitled to qualified

23 immunity from damages.

24    "[G]overnment officials performing discretionary functions generally are shielded

25 from liability for civil damages insofar as their conduct does not violate clearly established

26 /////

1  statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v.</u>

2  <u>Fitzgerald</u>, 457 U.S. 800, 818 (1982).

3              Consideration of qualified immunity in a Section 1983 claim raises
             two questions. <u>Menotti v. City of Seattle</u>, 409 F.3d 1113, 1152
4              (9th Cir.2005).  Under the approach set out by <u>Saucier v. Katz</u>, we
             first must ask "whether a constitutional right would have been
5              violated on the facts alleged."  533 U.S. 194, 200, 121 S.Ct. 2151,
             150 L.Ed.2d 272 (2001).  "If no constitutional right would have
6              been violated were the allegations established, there is no necessity
             for further inquiries concerning qualified immunity." <u>Id.</u> at 201,
7              121 S.Ct. 2151.

8              If a constitutional violation is established, we consider
             "whether that right was 'clearly established' such that 'it would be
9              clear to a reasonable officer that his conduct was unlawful in the
             situation he confronted.'" <u>Menotti</u>, 409 F.3d at 1152, quoting
10             <u>Saucier</u>, 533 U.S. at 202, 121 S.Ct. 2151.  "This inquiry is wholly
             objective and is undertaken in light of the specific factual
11             circumstances of the case." <u>San Jose Charter of the Hells Angels</u>
             <u>Motorcycle Club v. City of San Jose</u>, 402 F.3d 962, 971 (9th Cir.),
12             cert. denied sub nom., <u>Decena v. San Jose Charter of Hells Angels</u>
             <u>Motorcycle Club</u>, --- U.S. ----, 126 S.Ct. 796, 163 L.Ed.2d 627
13             (2005), citing <u>Saucier</u>, 533 U.S. at 201, 121 S.Ct. 2151. . . .  "The
             relevant, dispositive inquiry in determining whether a right is
14             clearly established is whether it would be clear to a reasonable
             officer that his conduct was unlawful in the situation he
15             confronted." <u>City of San Jose</u>, 402 F.3d at 971, quoting <u>Saucier</u>,
             533 U.S. at 202, 121 S.Ct. 2151.  "[I]f officers of reasonable
16             competence could disagree on this issue, immunity should be
             recognized." <u>Malley</u>, 475 U.S. at 341, 106 S.Ct. 1092.

17

18  <u>Brittain v. Hansen</u>, 451 F.3d 982, 988 (9th Cir. 2006).

19             Prior to July 2005, there was no clearly established right protecting plaintiff from

20  enforcement of the 1997 grooming regulations.  In 2004, the CDCR's 1997 hair length

21  regulations were upheld against a First Amendment challenge, <u>see</u> <u>Henderson v. Terhune</u>, 379

22  F.3d 709 (9th Cir. 2004), and as early as 1990 prison regulations governing beard length had also

23  withstood a First Amendment challenge.  <u>See</u> <u>Friedman v. Arizona</u>, 912 F.2d 328 (9th Cir. 1990).

24  Through July 2005, therefore, it would not have been clear to a reasonable correctional official

25  that enforcement of the 1997 grooming regulations was unlawful.  Moreover, the record shows

26  that after the July 2005 <u>Warsoldier</u> decision, officials with the CDCR have taken all steps

8

1   necessary to restore plaintiff to the status he was in before the regulations were enacted.  For

2   these reasons, the court finds that defendants are entitled to qualified immunity from plaintiff's

3   claim for money damages arising from defendants' enforcement of the 1997 grooming

4   regulations.[3]

5           For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that

6   defendants' February 3, 2006 motion for summary judgment be granted.

7           These findings and recommendations are submitted to the United States District

8   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen**

9   days after being served with these findings and recommendations, any party may file written

10  objections with the court and serve a copy on all parties.  Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised

12  that failure to file objections within the specified time may waive the right to appeal the District

13  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14  DATED:  August 28, 2006.

UNITED STATES MAGISTRATE JUDGE

18  17/12;welc0072.msj

---

21          [3]  Plaintiff continues to seek relief in this action for alleged damage to his television and
    radio that occurred during enforcement of the grooming regulations.  Such relief is not available
22  in this § 1983 action.  See Hudson v. Palmer, 468 U.S. 517, 533 (1984) ("unauthorized
    intentional deprivation of property by a state employee does not constitute a violation of the
23  procedural requirements of the Due Process Clause of the Fourteenth Amendment if a
    meaningful postdeprivation remedy for the loss is available.")  Although plaintiff claims that his
24  television and radio were taken away as part of enforcement of the grooming regulations, the
    alleged damage to those items was not authorized by any state regulation or policy.  The
25  California Legislature has provided a remedy for tort claims against public officials in the
    California Government Code, §§ 900, et seq.  Plaintiff must seek relief for the alleged damage to
26  his television and radio, if at all, through the state tort claim system.